47 F.3d 1165
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 MUTUAL MINING, INCORPORATED, a corporation, Plaintiff-Appellant,
v.
DISTRICT 17, UNITED MINE WORKERS OF AMERICA; Local Union,
No. 5817, United Mine Workers Of America,
Defendants-Appellees.
 
 No. 94-1834.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 6, 1994.
Decided: February 7, 1995.
 ARGUED: Erin Elizabeth Magee, JACKSON & KELLY, Charleston, WV, for Appellant. Michael F. Niggemyer, DISTRICT 17, UMWA, Charleston, WV, for Appellees. ON BRIEF: L. Anthony George, JACKSON & KELLY, Charleston, WV, for Appellant.
 Before RUSSELL and MOTZ, Circuit Judges, and CURRIE, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This is a review of an order enforcing an arbitration award based on a collective bargaining agreement between Appellant Mutual Mining, Inc. [hereinafter "Employer"] and Appellees District 17, United Mine Workers of America and Local Union 5817, United Mine Workers of America [hereinafter collectively "Union"]. Jurisdiction is based on section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. Employer argues that the award fails to draw its essence from the collective bargaining agreement and is unenforceably ambiguous. Finding no merit to these contentions, we affirm.
 
 
 2
 Because the question whether an arbitrator exceeded the scope of his authority is a legal question, this court reviews the ruling of the district judge de novo. Upshur Coals Corp. v. United Mine Workers of America, Dist. 31, 933 F.2d 225 (4th Cir.1991).
 
 
 3
 When this dispute arose the parties were signatories to the National Bituminous Coal Wage Agreement of 1988 [hereinafter "the Agreement"], which provides for final and binding arbitration of grievances. Pursuant to Article XXVII of the Agreement, the parties agreed to settle grievances by the arbitration mechanism of the Agreement "without recourse to the court." (J.A. 20, 25). This case arose from the layoff of John Taylor.
 
 
 4
 Prior to December 1992, Taylor was employed full time as a Rock Loader. He operated an end loader to load rock and dirt into rock trucks for removal from the mining site. Periodically Taylor also served as a substitute Coal Loader. On December 22, 1992, Employer reduced its work force. Taylor was among those laid off. Dale Hartman, a full-time Coal Loader, was retained. Hartman's hire date was 24 days after that of Taylor. Taylor contends that under the Agreement, he should have been retained over Hartman. Taylor filed a grievance.
 
 The Agreement provided, in part, that:
 
 5
 (1) Reduction in Work Force
 
 
 6
 In all cases where the working force is to be reduced, Employees with the greatest seniority at the mine shall be retained provided that they have the ability to perform available work.
 
 
 7
 (2) Realignment Procedure
 
 
 8
 * * *
 
 
 9
 (b) Those Employees displaced from their job title shall be assigned available jobs on the basis of mine seniority and ability to step in and perform the work of the job at the time....
 
 
 10
 Article XVII(b) of the Agreement.
 
 Another provision established that:
 
 11
 Seniority at the mine shall be recognized in the industry on the following basis: length of service and the ability to step into and perform the work of the job at the time the job is awarded.
 
 
 12
 Article XVII(a) of the Agreement.
 
 
 13
 Employer's right to manage the work force is recognized as:
 
 
 14
 The management of the mine, the direction of the working force and the right to hire and discharge are vested exclusively in the Employer.
 
 
 15
 Article IA(d) of the Agreement.
 
 
 16
 Taylor's grievance was heard March 1, 1993, by a jointly selected panel arbitrator. The issue at the hearing was: "Did the Employer violate Article XVII when it laid off Loader John Taylor in a reduction of force and retained Loader Dale Hartman, with lesser seniority? If so, what should the remedy be?"
 
 
 17
 Employer maintained that under Article IA(d) of the Agreement it had an unfettered right to determine which employee could best perform the function of Coal Loader. Employer contended that coal loading was a key task, and that Taylor did not possess the requisite efficiency to operate as a full-time Coal Loader, although he might have been adequate as a substitute.
 
 
 18
 The arbitrator concluded that the only real issue under the Agreement was Taylor's ability to step into the Coal Loader function and perform the task of loading and cleaning coal at the minimum standard called for by the Employer, in accordance with Article XVII. The arbitrator found that although Taylor had been called on to serve as Coal Loader several times per week during his three-year tenure with Employer, Employer produced no evidence of Taylor's poor job performance in that role. The arbitrator also recognized that Taylor had experience working as a Coal Loader with a prior employer. The arbitrator thus concluded, in an written award dated May 4, 1993, that Taylor met Employer's minimum standards for the job and was therefore entitled to the position. He directed Employer to reinstate Taylor to the Coal Loader position retroactive to December 22, 1992.
 
 
 19
 On June 9, 1993, Employer filed its complaint seeking to vacate the award. It argued that the award is contrary to the requirements of the Agreement because it ignores Employer's minimum standards for the Coal Loader position and substitutes the arbitrator's own standards. Moreover, Employer contended that the award is unenforceably ambiguous in failing to direct the fate of Hartman, the junior employee. Union denied the material allegations of Employer's complaint and interposed a counterclaim in which it sought permanent injunctive relief enjoining Employer from continued refusal to abide by the arbitration award. On cross-motions for summary judgment by Employer and Union, the district court found that the arbitrator had construed the appropriate contractual terms, and upheld the arbitrator's finding that Taylor was minimally qualified under Employer's own standards, notwithstanding "its unsupported assertion to the contrary." (Memo. Order, 5/19/94 at 9). The court also dismissed Employer's alternative contention that the award was fatally ambiguous for failure to address Hartman's fate. This appeal followed.
 
 
 20
 In a trilogy of cases decided in 1960, the United States Supreme Court emphasized that federal courts should refuse to review the merits of an arbitration award under a collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960). "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." Enterprise Wheel, 363 U.S. at 599. The rule has emerged that,
 
 
 21
 [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.
 
 
 22
 United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 38 (1987). See also Enterprise Wheel, 363 U.S. at 597; Upshur Coals Corp., 933 F.2d at 229 (4th Cir.1991) (arbitration award enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may be reversed only when arbitrators understand and correctly state the law, but proceed to disregard it). Thus, an arbitrator's award will be overturned only if the arbitrator must have based his award on his own personal notions of right and wrong, because only then does the award fail to draw its essence from the collective bargaining agreement. Id.
 
 
 23
 Here it is clear that the arbitration award draws its essence from the underlying Agreement, as required by the Steelworkers Trilogy and our own cases. The arbitrator construed Article XVII's directive that the employee be able "to step into and perform the work of that job" to mean Taylor had to be merely minimally qualified as a Coal Loader. In concluding Taylor met that standard, the arbitrator examined the broad language of Article IA(d), vesting hire and discharge rights in Employer, and considered that provision in the context of the whole Agreement, including Article XVII, which established a seniority system for layoffs. The arbitrator rejected Employer's contention that it possessed unfettered discretion to mandate minimum qualifications based on its subjective review of efficiency, because he concluded that such interpretation would render the seniority provisions of Article XVII meaningless.
 
 
 24
 The arbitrator sought to give meaning to the phrase "step into and perform the work of the job" in the context of the whole agreement, and sought to apply his understanding of that phrase to the evidence adduced at the hearing. Based on Employer's own part-time placement of Taylor into the Coal Loader position for several years, and the Employer's failure to produce evidence of inadequate job performance in that capacity, the arbitrator concluded that Taylor must have met Employer's minimum qualifications for the position.
 
 
 25
 This court must uphold an arbitrator's interpretation of a contract so long as it "draws its essence from the agreement." Enterprise Wheel, 363 U.S. 593, 597 (1960). Here Employer has failed to show that arbitrator's decision was premised on his own notions of right and wrong. The arbitrator reasoned that Employer's own acts of placing Taylor in the Coal Loader position evidenced Taylor's ability to perform the job. The arbitrator resolved the factual dispute as to Taylor's qualifications by examining the entire evidence in the case and comparing that to his interpretation of the Agreement's requirements. The parties bargained for the fact finding and legal interpretation of an arbitrator, and that is what they received. No evidence exists of the arbitrator's manifest infidelity to the Agreement by application of his own standards of right and wrong. Accordingly, Employer's contention that the arbitration award fails to draws its essence from the Agreement is without foundation.
 
 
 26
 The present case is distinguishable from those in which we have found that an arbitration award failed to draw its essence from a collective bargaining agreement. Generally those decisions resulted from cases in which the arbitrator's decision was ambiguous, Cannelton Industries, Inc. v. District 17, UMWA, 951 F.2d 591 (4th Cir.1991), the arbitrator failed to consider critical factors or interpret key terms of the agreement, Clinchfield Coal Co. v. District 28, UMWA & Local Union No. 1098, 736 F.2d 998 (4th Cir.1984); Clinchfield Coal Co. v. District 28, UMWA & Local Union No. 1452, 720 F.2d 1365 (4th Cir.1983), or the arbitrator imposed a punitive damages penalty when the agreement had no express provision for punitive damages, Island Creek Coal Co. v. District 28, United Mine Workers of America, 29 F.3d 126 (4th Cir.1994), cert. denied, 63 U.S.L.W. 3416, 3420 (1994). Here the arbitrator studiously elaborated his consideration and interpretation of the Agreement's key provisions, detailed his fact finding, and imposed a remedy expressly recognized under the Agreement.
 
 
 27
 Employer's claim of ambiguity in the award is also without merit. Employer argues that the award is contradictory in failing to direct that Hartman should be displaced. This court rejects Employer's reading of the arbitration award, and finds that it clearly concludes that Taylor's "experience as Coal Loader with the Employer and other companies entitles him to this job, if only one such position exists, held by a less senior employee." (Arb. Award at 8). Although the arbitrator may have expressed, in dicta, his hope that Employer's resourcefulness might result in the continued employment of both employees, it is clear that the actual award is to Taylor, and that he has sole right to the position if only one position is available.
 
 
 28
 For the foregoing reasons, the district court's grant of summary judgment to Union, thereby affirming the arbitrator's award, is affirmed.
 
 AFFIRMED